UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

MAUREEN DAUPHINEE

                 Plaintiff,               **COMPLAINT**

v.

                                             Civil Case No.\_\_\_\_

COUNTY OF MONROE;
MONROE COUNTY BOARD OF ELECTIONS

                 Defendants.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Plaintiff, MAUREEN DAUPHINEE ("Ms. Dauphinee" or "Plaintiff"), by and through her attorneys, THE TARANTINO LAW FIRM, LLP, for her Complaint against Defendants COUNTY OF MONROE and MONROE COUNTY BOARD OF ELECTIONS, (Hereinafter "MCBOE"), alleges as follows:

## NATURE OF ACTION

1.       Plaintiff brings this action pursuant to the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991; the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*), and the New York Human Rights Law, ("NYHRL"), Executive Law § 290 *et seq.,* for damages arising from discrimination, hostile work environment and retaliation in Plaintiff's terms and conditions of employment due to Plaintiff's age, race, and disability, and for retaliation for engagement in a protected activity, by Defendants, COUNTY OF MONROE and MONROE COUNTY BOARD OF ELECTIONS.

## JURISDICTION AND VENUE

2.       Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1343 (4), 2201, 2202, and pursuant to 42 U.S.C. § 1988.

3.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental and pendent subject matter jurisdiction over the claims asserted by Plaintiff that are grounded in State law, because the State law claims are so related to the claims over which this Court has original subject matter jurisdiction and arise from a common nucleus of operative facts, and the State law claims form part of the same case or controversy under Article III of the United States Constitution.

4.    Upon information and belief, Defendant COUNTY OF MONROE, New York is a municipal corporation subject to the jurisdiction of the Western District of New York.

5.    The venue of this action is properly placed in the Western District of New York pursuant to § 706(f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331, 1337, 1343(4) and 1391.  Plaintiff resides in this district.  Defendants' offices are located in this district, and a substantial part of the events giving rise to Plaintiff's claims of discrimination and retaliation occurred in this district.

## **PARTIES**

6.    Plaintiff is a citizen of the United States of America, and resides in the County of Monroe and State of New York.

7.    At all relevant times, Plaintiff was a covered "employee" as defined in the Age Discrimination in Employment Act 29 U.S.C. §§ 630(f) and 631(a), Title VII, 42 U.S.C. § 2000(e); the Americans with Disability Act of 1990, 42 U.S.C. § 12111(4); and the New York State Human Rights Law, Executive Law § 290 *et seq*.

8.    Plaintiff is a 65-year-old woman.

9.    At all relevant times, Plaintiff was employed with the County of Monroe in Monroe County's Board of Elections.

10.    At all relevant times, Defendant, Monroe County was and still is an employer as defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Americans with Disability Act (42 USC § 12203); the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*); and the New York State Human Rights Law, Executive Law § 290 *et seq.*

11.    Plaintiff has a documented disability, and at all times herein relevant Defendants were aware of this disability.

12.    Ms. Dauphinee received spinal decompression and fusion surgery on her L4, L5, and S1 vertebrae which led to her having difficulty standing for long periods of time post-surgery. The surgery did not interfere with her ability to perform the essential functions of her job.

13.    Further, Ms. Dauphinee has suffered from arthritis in her knees which has also contributed to her difficulty standing for long periods of time. Her arthritis did not limit her ability to perform the essential functions of her job.

<strong><u>CONDITIONS TO PRECEDENT TO ACTION</u></strong>

14.    On or about September 24, 2020 and March 3, 2022, Plaintiff filed complaints of employment discrimination with the U.S. Equal Employment Opportunity Commission ('EEOC'), alleging discrimination based on her age, race, and disability, hostile work environment, and retaliation for complaining of such discrimination.

15.    Plaintiff received her Notice of a Right to Sue from the EEOC on or about June 10, 2024. A copy of the Notice of a Right to Sue is attached hereto as **Exhibit A**.

16.    Plaintiff received her second Notice of a Right to Sue from the EEOC on or about July 17, 2024. A copy of the Notice of a Right to Sue is attached hereto as **Exhibit B**.

17.    Plaintiff has filed the instant action within ninety (90) days of the receipt of both Notices of a Right to Sue from the EEOC.

3

## STATEMENT OF FACTS

18.     Plaintiff was hired as the Democratic Supervisor of Training by Defendants on June 16, 2008.

19.     She was promoted to the position of Senior Control Clerk on September 15, 2008, and on July 14, 2009, she was moved to Secretary for the Monroe County Board of Elections.

20.     Ms. Dauphinee's pay rate as Secretary of the Board of Elections was paid at a rate of $25.00 an hour.

21.     Before she was eventually unlawfully terminated by the Monroe County Board of Elections, Maureen Dauphinee was a 13-year and 5-month employee who was heavily involved with the incorporation of the new voting machines that were administered for the 2008 election. Ms. Dauphinee has worked in politics for nearly forty (40) years, and has worked on the staff of several politicians including Congresswoman Lousie Slaughter and Governors Mario Cuomo, Elliot Spitzer, and Michael Patterson. She has also personally run for office on three (3) separate occasions.

22.     In or around the year 2019, then Commissioner Thomas F. Ferrarese, who initially hired Ms. Dauphinee, retired from his position. Deputy Commissioner Colleen D. Anderson took his place thereafter in or around September 2019. Colleen D. Anderson stepped down from her position as Commissioner and was replaced by Interim Commissioner Lashana Boose ("Ms. Boose") in March of 2020.

23.     Commissioner Jackie Ortiz ("Ms. Ortiz") became MCBOE Commissioner in August of 2020. Both Commissioners Boose and Ortiz harassed discriminated, retaliated, and created a hostile work environment against Plaintiff, based on her age, race, and disability, which culminated in her eventual termination on November 16, 2021.

24. Commissioner Jackie Ortiz was Plaintiff's supervisor at the time of her termination. Lashana Boose was the Commissioner and Plaintiff's supervisor at the time of her initial EEOC Complaint.

25. In or around March of 2020, Ms. Lashana Boose became Interim Democratic Commissioner of the MCBOE.

26. The MCBOE members would vote on July 25, 2020 for the new commissioner. With her many years in politics and experience in the board of elections, Plaintiff decided to run for the MCBOE Commissioner's role. Ms. Dauphinee was the only candidate of nine (9) that submitted a resume with institutional experience that would benefit her on day one of the job. Her campaign quickly faltered when she was told by Defendants' employees that "she was the wrong color" for the commissioner position.

27. Interim Commissioner Boose, a black woman, wanted to transform the board of elections and insert her own staff. Plaintiff heard on numerous occasions Commissioner Boose state, "all the white people need to be replaced." Upon information and belief, Commissioner Boose desired to find a way to get Ms. Dauphinee and the other white employees out of the board of elections.

28. On May 23, 2020, Commissioner Lashana Boose tried to reassign Plaintiff to the Inspector Training Team. Commissioner Boose demanded long hours of standing when performing the clerical duties with this training team. Commissioner Boose's created duties were outside of the scope of the essential duties of the job. Plaintiff was not able to stand for long hours due to her disability. However, she was able to perform the essential functions of the position, which did not include standing for long periods of time.

29.     Ms. Dauphinee informed Ms. Boose that she would not be able to perform her new assignment because of her disability to which Ms. Boose replied that Ms. Dauphinee had, "no choice."

30.     In 2008, Ms. Dauphinee had spinal decompression and fusion surgery on her L4, L5, and S1 vertebrae. Plaintiff's surgery required her to have twelve (12) screws and two (2) rods placed into her spine. She has damage in her L3 vertebrae as well.

31.     Ms. Dauphinee's surgery failed to alleviate her back issues. She has had consistent pain which causes numbness in her legs and neck if she stands for long periods of time. She experiences this numbness if she does a heavy amount of bending and/or lifting.

32.     Additionally, Ms. Dauphinee has severe arthritis in both of her knees as she is "bone on bone" and requires injections every three (3) months from her orthopedic surgeon to help manage her pain.

33.     Pursuant to 42 U.S.C. § 12102, Plaintiff qualifies as having a disability due to her consistent back and knee pain which limits major activities in her life.

34.     However, Ms. Dauphinee refused to transfer positions, and submitted a complaint to HR. This complaint noted that Commissioner Boose was trying to have Plaintiff work a job she physically could not perform.  Plaintiff's physician submitted verification of physical restrictions and limitation which were sent through the Monroe County HR Confidential Fax number and disregarded in an email by County representative Scott Walsh.

35.     Defendants created a hostile work environment based on Plaintiff's disability by trying to force her to work a position that she could not physically perform by creating duties that were beyond the essential functions of the job. Specifically, Defendants attempted to force Plaintiff to stand for twelve (12) hours a day in this new position.

36.     In or around spring/summer of 2020, Plaintiff was forced to take FMLA leave because she required oral surgery, was undergoing severe amounts of stress from her job and the harassment she was facing, and was waking up without feeling in her left arm from a pinched nerve which required Plaintiff to receive physical therapy three (3) times a week.

37.     During the time Plaintiff was out on FMLA leave, the MCBOE was facing backlash on social media from county legislators regarding the racial status of various MCBOE employees. Specifically, Legislators Ernest Flagler-Mitchell and Vincent Felder posted on Facebook that "white supremacy" penetrated the MCBOE. Ernest Flagler-Mitchell made allegations that the prior Commissioners chose to pay white employees more than black employees, and that white employees (referring to Plaintiff) were out on medical leave refusing to work and were purposefully sabotaging the Black Deputy Commissioner. Legislator Flagler-Mitchell posted this after the heavily criticized June 2020 primary election.

38.     Additionally, Legislator Sabrina Lamar also criticized the MCBOE on social media by noting they had members on medical leave.

39.     The heightened criticism of the MCBOE led to an influx of newly hired Black and Hispanic employees and the number of white employees decreased.

40.     Additionally, upon information and belief, Commissioner Boose put in a request to reduce both Plaintiff's and another white employee's pay rate while they were out on FMLA leave. Commissioner Boose further put forward a budget plan that would eliminate both her and this other white individual's position while keeping every other position.

41.     When Plaintiff returned from her FMLA leave, Commissioner Ortiz was the new MCBOE Commissioner. However, the discrimination and hostile work environment that Plaintiff experienced under Commissioner Boose continued.

42.	Similarly to Commissioner Boose, Commissioner Ortiz would frequently make comments mentioning the need to remove the Defendants' white employees.

43.	Further, on several occasions Commissioner Ortiz asked Plaintiff, "how much longer do you have until retirement." Commissioner Ortiz not only wanted an office that was devoid of white employees, she wanted the MCBOE to get younger.

44.	This caused Ms. Dauphinee to file a Complaint with the EEOC, on September 24, 2020, where she claimed discrimination in the forms of race, age, and disability.

45.	After she submitted her EEOC Charge, Commissioner Ortiz continued to make discriminatory statements to Plaintiff regarding her age and race. These were not only discriminatory, but were retaliatory as well.

46.	During her over thirteen (13) years at the Monroe County Board of Elections, Plaintiff never received negative reviews of her job performance.

47.	Two weeks after election day in 2021, Defendants terminated Ms. Dauphinee. Defendants provided no reasoning for the termination.

48.	Upon information and belief, Defendants hired a replacement for Plaintiff that was a thirty (30) year old male who was less qualified than Plaintiff.

49.	Defendants wrongfully terminated Plaintiff Maureen Dauphinee by discriminating against her on the basis of age, race, and disability. Additionally, Defendants created a hostile work environment for Plaintiff while discriminating against her race, age, and disability – all protected characteristics.  Defendants further retaliated against Plaintiff.

**AS AND FOR THE FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. § 621 *et seq.*)**

50.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "49" as though fully set forth herein.

51.     Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her age, in violation of the Age Discrimination in Employment Act U.S.C. (ADEA) § 621 *et seq*.

52.     Defendants violated the ADEA by creating and allowing a culture of age discrimination to permeate Plaintiff's workplace and all aspects of her work environment.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment was maintained, fostered and promoted by the Defendants' discriminatory acts and conduct as described herein.

53.     Defendants discriminated against Plaintiff by terminating her because of her age which was evidenced by Defendant's repeated questioning of the older employee's retirement dates.

54.     The discrimination described herein shows a continuous pattern of unlawful employment practices.

55.     Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered.

56.     Defendants knowingly and recklessly discriminated against the Plaintiff on the basis of her age by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

9

57. Defendants knowingly and recklessly permitted its employees, supervisors and leadership team to treat an older employee in a manner different from the treatment received by similarly situated employees.

58. Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's age.

59. Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

60. As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

61. Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

**AS AND FOR THE SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. § 621 *et seq.*)**

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "61" as though fully set forth herein.

63. Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her age, in violation of the Age Discrimination in Employment Act U.S.C. (ADEA) § 621 *et seq*.

10

64. Defendants violated the ADEA by creating and allowing a culture of age discrimination and a hostile work environment to permeate Plaintiff's workplace and all aspects of her work environment. This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment began in the year 2020 when Lashana Boose and Jackie Ortiz served as the MCBOE Commissioners and continued throughout the rest of Plaintiff's employment until she was wrongfully terminated.

65. The discrimination described herein shows a continuous pattern of unlawful employment practices. Specifically, Defendants created a hostile work environment by making discriminatory remarks about Ms. Dauphinee's age and by creating a hostile work environment for Plaintiff to work in.

66. Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered.

67. Defendants created a hostile work environment by threatening to force Plaintiff to work increasingly long hours and denying her access to use her paid time off. Defendant's actions have caused a greater risk of injury to the Plaintiff and a strain on her emotional and physical health.

68. Defendants knowingly and recklessly discriminated against Plaintiff on the basis of her age by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

69. Defendants knowingly and recklessly permitted its employees, supervisors and leadership team to treat an older employee in a manner different from the treatment received by similarly situated employees.

11

70.     Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's age.

71.     Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

72.     As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

73.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. § 621 *et seq.*)**

74.     Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "73" of this Complaint with the same force and effect as though more fully set forth herein.

75.     Defendants' actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

76.     Defendants retaliated against Plaintiff by terminating her employment, including but not limited to terminating her on November 16, 2021, because she engaged in protected activity under the ADEA, including but not limited to, making complaints of age discrimination and submitting an EEOC complaint for discriminatory conduct by Defendants on the basis of her age.

77.     Defendants' retaliation of Plaintiff because of her engagement in statutorily protected activity is violative of the ADEA, specifically 42 U.S.C. § 2000e-3.

78.     As a direct and proximate result of Defendants' retaliation and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, *inter alia*, back pay, front pay, and compensatory damages against Defendants pursuant to the ADEA.

79.     As a result of Defendants' unlawful employment practices, Plaintiff has been damaged in an amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

80.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

## AS AND FOR THE FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

81.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "80" as though fully set forth herein.

82.     Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

83.     Defendants violated Title VII by creating and allowing a culture of race discrimination and a hostile work environment to permeate Plaintiff's workplace and all aspects of her work environment by continually allowing commissioners to make discriminatory statements against white employees, and to allow the discriminatory termination of white

13

employees.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment was maintained since the year 2020 through the rest of Plaintiff's employment and fostered and promoted by Defendants' discriminatory acts and conduct as described herein.

84.    The discrimination described herein shows a continuous pattern of unlawful employment practices.

85.    Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

86.    Defendants knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

87.    Defendants knowingly and recklessly permitted its supervisors and Commissioners to treat Caucasian employees in a manner different from the treatment received by similarly situated employees of other races.

88.    Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

89.    Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

90.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not

limited to those described above, Plaintiff has been damaged in the amount of $1 million.

91.   Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR THE FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

92.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "91" as though fully set forth herein.

93.   Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Civil Rights Act of 1991.

94.   Defendants violated Title VII by creating and allowing a culture of race discrimination to permeate Plaintiff's workplace and all aspects of her work environment by continually allowing commissioners to make discriminatory statements against white employees, and to allow the discriminatory termination of white employees for people of color.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment was maintained since the year 2020 through the rest of Plaintiff's employment and fostered and promoted by Defendants' discriminatory acts and conduct as described herein.

95.   The discrimination described herein shows a continuous pattern of unlawful employment practices.

96.   Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

15

97.    Defendants knowingly and recklessly discriminated against the Plaintiff on the basis of her race by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

98.    Defendants knowingly and recklessly permitted its supervisors and Commissioners to treat Caucasian employees in a manner different from the treatment received by similarly situated employees of other races.

99.    Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a racially hostile and unsupportive work environment.

100.    Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

101.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $1 million.

102.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

**<u>AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.</u>**

103.    Plaintiff repeats, reiterates and reasserts the allegations set forth in

16

Paragraphs "1" through "102" of this Complaint with the same force and effect as though more fully set forth herein.

104.    Defendants' actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

105.    Defendants retaliated against Plaintiff by terminating her employment, including but not limited to terminating her on November 16, 2021, because she engaged in protected activity under Title VII, including but not limited to, making complaints of race discrimination and submitting an EEOC complaint for discriminatory conduct by Defendants on the basis of her race.

106.    Defendants' retaliation of Plaintiff because of her engagement in statutorily protected activity is violative of Title VII of the Civil Rights Act of 1964.

107.    As a direct and proximate result of Defendants' retaliation and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress.  Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, *inter alia*, back pay, front pay, and compensatory damages against Defendants pursuant to the ADEA.

108.    As a result of Defendants' unlawful employment practices, Plaintiff has been damaged in an amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

109.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

**AS AND FOR THE SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of 1990 (42 U.S.C. § 12101)**

110.    Plaintiff repeats and realleges each and every allegation contained in

paragraphs "1" through "109" as though fully set forth herein.

111. At all times hereinafter mentioned, Plaintiff was a qualified individual with a disability.

112. Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her disability, in violation of the American with Disabilities Act of 1990 (42 U.S.C. § 12101).

113. Defendants violated the ADA by creating and allowing a culture of Disability discrimination to permeate Plaintiff's workplace and all aspects of her work environment. This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment was maintained, fostered and promoted by the Defendants' discriminatory acts and conduct as described herein.

114. Defendants discriminated against Plaintiff by terminating her because of her disability, which was evidenced by Defendant's repeated decisions to try and force Plaintiff to work a position that she could not physically perform. Defendants' further denied Plaintiff the ability to use her paid time off.

115. The discrimination described herein shows a continuous pattern of unlawful employment practices.

116. Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered.

117. Defendants knowingly and recklessly discriminated against the Plaintiff on

18

the basis of her disability by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

118.    Defendants knowingly and recklessly permitted its employees, supervisors and leadership team to treat an employee with a disability in a manner different from the treatment received by similarly situated employees.

119.    Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's disability.

120.    Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

121.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

122.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of 1990 (42 U.S.C. § 12101)**

123.    Plaintiff repeats and realleges each and every allegation contained in

19

paragraphs "1" through "122" as though fully set forth herein.

124.    At all times hereinafter mentioned, Plaintiff was a qualified individual with a disability under the ADA.

125.    Defendants discriminated against Plaintiff with respect to the terms and conditions of employment because of her disability, in violation of the Americans with Disabilities Act (ADA) §12101 *et seq*.  Defendants violated the ADA by creating and allowing a culture of disability discrimination and hostile work environment to permeate Plaintiff's workplace and all aspects of her work environment.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment began in the year 2020 when Lashana Boose and Jackie Ortiz served as the MCBOE Commissioners and continued throughout the rest of Plaintiff's employment until she was wrongfully terminated.

126.    The discrimination described herein shows a continuous pattern of unlawful employment practices. Specifically, Defendants created a hostile work environment by threatening to transfer Ms. Dauphinee and making her work on her feet for long hours causing pain to her back and knees and denying her access to use her paid time off.

127.    Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered.

128.    Defendants created a hostile work environment by forcing Plaintiff to work increasingly long hours, denying her access to use her paid time off. Defendant's actions have caused a greater risk of injury to the Plaintiff and a strain on her emotional and physical health.

129.    Defendants knowingly and recklessly discriminated against Plaintiff on the

20

basis of her disability by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

130.    Defendants knowingly and recklessly permitted its employees, supervisors and leadership team to treat disabled employees in a manner different from the treatment received by similarly situated employees.

131.    Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's disability and physical condition.

132.    Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

133.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

134.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of 1990 (42 U.S.C. § 12101)

135.    Plaintiff repeats, reiterates and reasserts the allegations set forth in

21

Paragraphs "1" through "134" of this Complaint with the same force and effect as though more fully set forth herein.

136. At all times hereinafter mentioned, Plaintiff was qualified individual with a disability.

137. Defendants' actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

138. Defendants retaliated against Plaintiff by terminating her employment, including but not limited to terminating her on November 16, 2021, because she engaged in protected activity under the ADA, including but not limited to, making complaints of disability discrimination and submitting an EEOC complaint for discriminatory conduct by Defendants on the basis of her disability.

139. Defendants' retaliation of Plaintiff because of her engagement in statutorily protected activity is violative of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101).

140. As a direct and proximate result of Defendants' retaliation and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress. Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award of, *inter alia*, back pay, front pay, and compensatory damages against Defendants pursuant to the ADA.

141. As a result of Defendants' unlawful employment practices, Plaintiff has been damaged in an amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

142. Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

22

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST THE DEFENDANT, PLAINTIFF ALLEGES: AGE, RACE, and DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 _et seq._)**

143.    Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "142" of this Complaint with the same force and effect as though more fully set forth herein.

144.    As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

145.    During the course of Plaintiff's employment, Defendants treated Plaintiff adversely because of her age, race, and disability and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the NYSHRL, Executive Law § 290 et seq.

146.    As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Defendants discriminated against and terminated Plaintiff because of her age, race, and disability in violation of the NYSHRL, Executive Law § 290 et seq.

147.    Defendants have engaged in a pattern and practice of discrimination against Plaintiff with respect to compensation, terms, conditions, and privileges of employment and subjected her to a hostile work environment because of her age, race, and disability in violation of the NYSHRL, Executive Law § 290 et seq.

148.    Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights.

149.    As a result of Defendants' actions, conduct, and omissions, including but

not limited to those described above, Plaintiff incurred damages including but not limited to, lost wages and employee benefits, lost employment opportunities, mental anguish, embarrassment and attorneys' fees.

150.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($,000,000.00) Dollars, exclusive of interest and costs.

151.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES: HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 *et seq.*)

152.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "151" as though fully set forth herein.

153.    As set forth above, this Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

154.    Defendants violated the Executive Law by creating and allowing a culture of age, race, and disability discrimination and hostile work environment to permeate Plaintiff's workplace and all aspects of her work environment.  This hostile and abusive work environment was created by decisions, actions and conduct engaged in by Defendants. The severe and pervasive abusive environment began in the year 2020 when Lashana Boose and Jackie Ortiz served as the MCBOE Commissioners and continued throughout the rest of Plaintiff's employment until she was wrongfully terminated.

155.    The discrimination described herein shows a continuous pattern of unlawful

24

employment practices. Specifically, Defendants created a hostile work environment by (1) making discriminatory remarks about Ms. Dauphinee's age, (2) making discriminatory remarks regarding Ms. Dauphinee's race, and (3) threatening to transfer Ms. Dauphinee and make her work on her feet for long hours causing pain to her back and knees and denying her access to use her paid time off. Defendants' actions have caused a greater risk of injury to the Plaintiff and a strain on her emotional and physical health.

156.    Defendants had actual and constructive knowledge of the conduct described herein, but failed to take any remedial action to put an end to the discrimination Plaintiff suffered and the hostile environment to which they were subjected.

157.    Defendants knowingly and recklessly discriminated against Plaintiff on the basis of her age, race, and disability by having direct and firsthand knowledge of discriminatory acts towards Plaintiff and failing to take remedial and precautionary steps for the protection of the rights of the Plaintiff.

158.    Defendants failed to provide Plaintiff with a suitable work environment and knowingly and recklessly exposed Plaintiff to a discriminatory and potentially physically dangerous work environment due to Plaintiff's age, race, and disability.

159.    Defendants' wrongful acts, conducts, and omissions including but not limited to, those described above, were willful and wanton and done with malice or reckless indifference to Plaintiff's rights and feelings, thereby entitling Plaintiff to an award of compensatory damages, including but not limited to lost wages, loss of future income, compensation and benefits, compensation for emotional pain and suffering and/or punitive damages.

160.    As a result of Defendants' wrongful acts, conduct, and omissions, including

25

but not limited to those described above, Plaintiff has been damaged in the amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

161.   Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable.

### AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST THE DEFENDANT, PLAINTIFF ALLEGES: RETALIATORY TERMINATION IN VIOLATION OF NEW YORK'S HUMAN RIGHTS LAW (N.Y. Executive Law § 290 *et seq*)

162.   Plaintiff repeats, reiterates and reasserts the allegations set forth in Paragraphs "1" through "161" of this Complaint with the same force and effect as though more fully set forth herein.

163.   As set forth above, this Court has jurisdiction over Plaintiff's state law claim for retaliation pursuant to 28 U.S.C. § 1367.

164.   Defendants' actions through its agents, as described above, evidence its retaliation against Plaintiff due to Plaintiff's engagement in statutorily protected rights.

165.   Defendants terminated Plaintiff because she filed complaints for age, race, disability discrimination, harassment, and retaliation against them, including a charge of discrimination with the EEOC.

166.   Defendants' termination of Plaintiff is violative of New York's Human Rights Law, specifically N.Y. Executive Law § 296(1)(e).

167.   As a direct and proximate result of Defendants' retaliatory termination and conduct towards Plaintiff, Plaintiff has suffered physical and emotional distress. Moreover, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliation, unless and until this Court grants relief and an award

26

of, inter alia, back pay, front pay, and compensatory damages against Defendants pursuant to the NYSHRL.

168.    As a result of Defendants' unlawful employment practices, Plaintiff has been damaged in an amount of no less than One Million and 00/100 ($1,000,000.00) Dollars, exclusive of interest and costs.

169.    Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury as to all issues so triable

**WHEREFORE**, Plaintiff prays to this Court for the following:

For the First through Twelfth Causes of Action, Plaintiff demands judgment against Defendants as follows:

a.    For recovery of $1 million against Defendants as actual damages for loss of revenue, including back pay, front pay, and other past and future benefits, mental anguish, emotional distress, and embarrassment in an equal amount as liquidated damages, and compensatory damages and for punitive damages together with interest as a result of Defendant's discrimination against Plaintiff;

b.  For the recovery of costs and counsel fees as provided by statute;

c.  For trial by jury on all triable issues; and

d.  For such other and further relief as the Court may deem just, fit and proper.

Dated:        September 8, 2024
              Buffalo, New York

Respectfully Submitted,

*/s/ Kevin P. Wicka*
Kevin P. Wicka, Esq.
The Tarantino Law Firm, LLP
*Attorneys for Plaintiff*
City Centre

27

610 Main Street, Suite 300
Buffalo, New York 14202
(716) 849-6500
kwicka@tarantinolaw.com